UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil No. 3:06cv00412

| | |
|---|---|
| **STEVEN WILSON POARCH, SR.,**<br><br>                            **Plaintiff,**<br>v.<br><br>**AMERICAN GENERAL FINANCIAL SERVICES, INC.**, a Delaware Corporation, and **AMERICAN GENERAL FINANCIAL SERVICES, INC.**, a Georgia Corporation,<br><br>                            **Defendants.** | **PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST, SECOND, THIRD AND FIFTH CAUSES OF ACTION AND PLAINTIFF'S FOURTH CAUSE OF ACTION IN PART** |

COMES NOW the Plaintiff ("Mr. Poarch") and submits this Brief in Opposition to the Motion to Dismiss Plaintiff's First, Second, Third and Fifth Causes of Action and Plaintiff's Fourth Cause of Action in Part filed by Defendant, American General Financial Services, Inc., a Delaware corporation ("AGFS-Delaware") and in support thereof, says as follows:

## PROCEDURAL HISTORY

Mr. Poarch filed this civil action on August 23, 2006 in the Superior Court Division of Gaston County, North Carolina. On September 27, 2006, the Defendants filed a Notice of Removal to the United States District Court for the Western District of North Carolina, Charlotte Division. On October 2, 2006, the Defendant filed a Motion to Dismiss Plaintiff's First, Second, Third and Fifth Causes of Action and Plaintiff's Fourth Cause of Action in Part. Mr. Poarch files this Brief in opposition to Defendants' Motion.

In his lawsuit, Mr. Poarch alleges defamation, unfair and deceptive trade practices, and violations of the Fair Credit Reporting Act against the Defendants. He also seeks declaratory judgment and injunctive relief.

**FACTS**

Mr. Poarch is a victim of identify theft. In or around May 2001, his personal information was used, without his knowledge or consent, to open an Account with the Defendants and purchase goods from a business called The Flooring Zone ("Account"). Significantly, the name on the credit application is not Mr. Poarch's name and the address is not his address. However, the Account was erroneously reported in Mr. Poarch's credit file. Mr. Poarch notified the Defendants on more than one occasion that he was not the maker on the Account. Notwithstanding, the Account continued to report in his credit file and upon information and belief, reports in his credit file at the present time.

**ARGUMENT**

A Motion to Dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Byrd v. Hunt*, 136 F. Supp. 2d 511, 513 (M.D.N.C. 2001). Further, in determining a Motion to Dismiss under Rule 12(b)(6), the court "must assume all of the well-pleaded allegations in the complaint to be true." *Id.* at 513. Looking only to the pleadings, as is required when considering a Motion to Dismiss, Mr. Poarch has stated claims for which relief can be granted. *See* Fed. R. Civ. Pro. 12. As a result and based on the pleadings alone, the Motion to Dismiss should be denied.

**I.     The Defamation Claim Is Not Time-Barred**

The Defendants allege that Mr. Poarch's claim for defamation is time-barred because his lawsuit was filed more than one year after Mr. Poarch learned of the defamation in August 2003. As a Motion to Dismiss only considers the allegations contained in the Complaint, the Defendants must show that Mr. Poarch's defamation claim is time-barred on the face of the Complaint. The Defendants do not make this showing.

The erroneous Account was published and republished in Mr. Poarch's credit file. North Carolina courts recognize the theory of continuous publication and republication in an action for defamation. *See Pressley v. Continental Can Co., Inc*., 39 N.C. App. 467 (1979). Mr. Poarch learned of the erroneous reporting in or around 2003. After notifying the Defendants of the reporting of the erroneous Account, he was informed the Account was removed from his credit file. Some time prior to Mr. Poarch's disputes to the credit bureaus in August 2004, the Defendants began to re-report the Account. The Defendants verified the Account as accurate in or around September 2004. Upon information and belief, the Defendants continue to report the erroneous information on a monthly basis due to the industry standard by which credit reporting agencies generally update their records. To the best of Mr. Poarch's knowledge, the Account continues to report in his credit file today. Further, the Defendants have placed nothing in the record to show that the erroneous Account has been removed from Mr. Poarch's credit file.

At least one appellate court has recognized the "multiple publication rule." The "multiple publication rule" applies when multiple communications are published regarding the same defamatory matter by the same defamer. *See Musto v. Bell south Telecommunications Corporation*, 748 So. 2d 296, 297 (Ct. App. Fl. 1999). In such an instance, each communication is a "separate and distinct publication, for which a separate cause of action arises." *Id.* at 297. Also, a person defamed by an incorrect credit report suffers injury each time the defaming communication is published resulting in a separate cause of action for each publication. *Id.* at 298 (citing *Schneider v. United Airlines, Inc*., 208 Cal. App. 3d 71, 256 Cal. Rptr. 71 (Cal. Ct. App. 1989).

The continued reporting of the erroneous Account qualifies under the multiple publication rule. Each time the defamatory information is republished to Mr. Poarch's credit

file, presumably on a monthly basis, a new and separate cause of action accrues. In the event the Account remains on Mr. Poarch's credit file today, he has one year from today to file a defamation claim for that publication. Further, as nothing on the face of the Complaint indicates Mr. Poarch's claim for defamation is time-barred and as the Defendants have made no showing that the Account is no longer reporting in Mr. Poarch's credit file, the Defendants' Motion to Dismiss Mr. Poarch's second cause of action should be denied.

**II       The FCRA Claims Are Not Time-Barred**

The Defendants misinterpret the Complaint when asserting that Mr. Poarch alleges two different violations under the FCRA. The Defendants appear to claim that the Complaint alleges a violation under 15 U.S.C. § 1681s-2(a), which requires furnishers to report accurate information. *See* 15 U.S.C. § 1681s-2(a). This is not true. Mr. Poarch does not allege nor assert any such cause of action because, pursuant to § 1681s-2(d), no private right of action exists against a *furnisher* of credit information for reporting inaccurate information in the first instance. As a result, the statute of limitations relating to § 1681s-2(a) is not at issue and should not be considered.

A private right of action only accrues under § 1681s-2(b) upon the Defendants' failure to conduct a reasonable reinvestigation. This is Mr. Poarch's only claim under the FCRA. Under § 1681s-2(b), the statute of limitations does not begin to run until after a consumer disputes inaccurate information with the credit reporting agencies. Pursuant to § 1681s-2b(2) and § 1681i(a)(1), furnishers have 30 days from the date each credit reporting agency *receives* a consumer's disputes to conduct their reinvestigation. (emphasis added). Upon the expiration of the 30-day deadline without furnishers' completing a reasonable reinvestigation, a cause of action accrues under § 1681s-2(b).

All three credit reporting agencies to which Mr. Poarch disputed the Account, received Mr. Poarch's dispute letters on August 25, 2004. As a result, the Defendants had until September 24, 2004 to conduct a reasonable reinvestigation of Mr. Poarch's disputes. Consequently, Mr. Poarch's cause of action under the FCRA did not accrue until after September 24, 2004. Mr. Poarch's lawsuit was filed within two years after September 24, 2004. As a result, Mr. Poarch's claim under the FCRA is not time-barred. The Defendants' Motion to Dismiss as to Mr. Poarch's fourth cause of action should be denied.

**III.  Unfair And Deceptive Trade Practices**

Mr. Poarch's unfair and deceptive trade practices claim is not preempted by § 1681h(e). Section 1681h(e) of the Act states as follows:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

In order for § 1681h(e) to apply in this case, the Defendants must show they are protected by qualified immunity. Qualified immunity applies only if Mr. Poarch obtained knowledge of the Account through a required disclosure set forth in §§ 1681g, 1681h, or 1681m. *See Whitesides v. Equifax Credit Information Services, Inc.*, 125 F. Supp. 2d. 807 (W.D. La 2000). The Defendants have made absolutely no showing that qualified immunity even applies in the instant case.

Assuming *arguendo* that Mr. Poarch learned of the false reporting through some protected means set forth in §§ 1681g, 1681h or 1681m, the Defendants nevertheless reported the false information with malice or a willful intent to injure Mr. Poarch. Malice has been defined as reckless disregard of a statement's truth or falsity. *See Wiggins v. Equifax Servs., Inc.,* 848 F. Supp. 213 (D. D.C. 1993). *Wiggins* states that reckless disregard requires a showing of actual doubt about the truth of the statements. *Id.* at 223. Mr. Poarch notified the Defendants on multiple occasions that the Account did not belong to him. On at least one occasion, the Defendants removed the Account from Mr. Poarch's credit file, only to re-report the Account at a later date. In response to Mr. Poarch's dispute of the Account in 2004, the Defendants verified the Account. The Defendants are even in possession of the credit application, which contains a name other than Mr. Poarch's name and an address where Mr. Poarch has never resided. Notwithstanding, upon information and belief, the Account remains on Mr. Poarch's credit file. This is evidence of a malicious or willful intent to injure Mr. Poarch.

The Defendants also reference § 1681t(b)(1)(F) as a means for preempting Mr. Poarch's unfair and deceptive trade practices claim. Section 1681t(b)(1)(F) reads, in part:

> No requirement or prohibition may be imposed under the laws
> of any State with respect to any subject matter regulated under . . .
> section 1681s-2 of this title, relating to the responsibilities of
> persons who furnish information to consumer reporting agencies . . .

15 U.S.C. § 1681t(b)(1)(F).

This general preemption statute has been found to conflict with the more specific provision set forth in § 1681h(e). In *Jeffery v. Trans Union, LLC*, 273 F. Supp. 2d. 725 (E.D. Va. 2003), the Court found the total preemption analysis unpersuasive. Specifically, the *Jeffery* Court stated that although some Courts have held that § 1681t(b)(1)(F) completely subsumes § 1681h(e), this analysis is flawed because Congress left § 1681h(e) in place when it added § 1681t(b)(1)(F). *Id.*

6

at 727. Instead, the *Jeffery* Court held that another approach based on the language of the statutes is most persuasive and cited *Carlson v. Trans Union, LLC*, 259 F. Supp. 2d 517 (N.D. Tex. 2003) which held that § 1681h(e) applies to torts and § 1681t(b)(1)(F) applies to state statutory regulation. *Id.* at 727.

Similarly, the Court in *Barnhill v. Bank of America, N.A.*, 378 F. Supp. 2d. 696 (D. S.C. 2005) declined to follow the total preemption approach because it "fails to follow traditional principles of statutory construction and fails to account for the FCRA's legislative history. *Id.* at 700. The Court further stated, "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Id.* at 700. In order for the total preemption argument to stand, the language of § 1681h(e) would be rendered superfluous and meaningless. As a result, the *Barnhill* Court declined to adopt the total preemption approach.

District Courts throughout the Fourth Circuit have declined to accept the total preemption and temporal approaches rendering § 1681h(e) meaningless. The Defendants' Motion to Dismiss as to Mr. Poarch's third cause of action should be denied.

**IV.**     **Declaratory and Injunctive Relief**

Mr. Poarch has requested declaratory and injunctive relief by the Court to determine that a contract does not exist between Mr. Poarch and the Defendants and further, to order the Defendants to remove the Account from Mr. Poarch's credit file. It is certainly within the Court's power to determine whether or not a contract exists between the parties and to order the Defendants to discontinue their reporting of the Account on Mr. Poarch's credit file.

In *Johnson v. MBNA*, the Middle District of North Carolina declined to grant the Defendant's Motion for Summary Judgment as to the Plaintiff's claim for injunctive relief

finding that, since the evidence was not clear as to whether or not the Account had been completely removed from the Plaintiff's credit file, it was impossible to determine whether injunctive relief was necessary in order to make the Plaintiff whole. *See* Memorandum Opinion, *Johnson v. MBNA American Bank, National Association*, Civil No. 1:05CV150 (M.D.N.C. March 9, 2006). The *Johnson* Court found that if the Account was not removed from the Plaintiff's credit completely, granting her an adequate remedy at law, the Plaintiff may require equitable relief. *Id.*

Even further, the Supreme Court in *Califano v. Yamasaki*, 442 U.S. 682 (1979) stated, "Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction. *Id.* at 705. Sections 1681n and 1681o of the FCRA are silent as to a private litigant's ability to seek injunctive relief. Consequently, the language of the statute does not explicitly prohibit injunctive relief by a private litigant. Consistent with the standard set forth in *Yamasaki*, there is no clear command within the FCRA that a private individual such as Mr. Poarch cannot seek injunctive relief.

In addition, in *Andrews v. Trans Union Corp.*, the Plaintiff sought injunctive relief against both Defendants. The Court directly addressed the issue of whether or not the FCRA allows private litigants to seek injunctive relief. *Andrews v. Trans Union Corp*, 7 F. Supp. 2d. 1056, 1083 (C.D. Cal. 1998) *rev'd on other grounds*. The *Andrews* Court held that while injunctive relief on behalf of the public may not be allowed under the FCRA, the FCRA does allow injunctive relief on a Plaintiff's own behalf. *Id.* at 1084. *See also Greenway v. Information Dynamics, Ltd.*, 399 F. Supp. 1092 (D. Ariz. 1974). Also, the Court specifically analyzed *Mangio v. Equifax, Inc.*, 887 F. Supp. 283 (S.D. Fla. 1995), cited by the Defendant in the instant action. The *Andrews* Court flatly disagreed with *Mangio* and stated the *Mangio* Court

failed to recognize the purpose of the FCRA, which is to protect consumers from the reporting of inaccurate information about them. *Id.* at 1084. *See also Guimond v. Trans Union Credit Information Company*, 45 F. 3d. 1329, 1333 (9th Cir. 1995). The *Andrews* Court further held that *Mangio* ignored the Supreme Court's precedent set out in *Yamasaki*. The Court stated, "The FCRA contains no "clear command" that injunctive relief is unavailable; consequently, it is available." *Id.* at 1084.

Finally, the Court of Appeals cited the *Yamasaki* decision in *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F. 2d. 154 (11th Cir. 1990), when it reversed the District Court and held that private beneficiaries had a right to seek injunctive relief under the Perishable Agricultural Commodities Act ("PACA") even though the language of the statute and the legislative history discussed only the right of the Secretary of Agriculture to do so. *Id.* The Court held that neither PACA nor its legislative history restrict a private beneficiary from seeking injunctive relief. *Id.* The Court stated, "this Court resolves ambiguities in favor of the interpretation that permits federal courts to exercise fully their traditional equity powers. *Id.* at 158. Using the precedent set forth by the Supreme Court, injunctive relief is allowed absent a clear command to the contrary.

Without declaratory and injunctive relief, Mr. Poarch does not have adequate remedy at law. As such, Mr. Poarch respectfully requests that the Court deny Defendants' Motion to Dismiss his first and fifth causes of action.

## **CONCLUSION**

Mr. Poarch respectfully requests that the Court deny the Defendants' Motion to Dismiss.

DATED this 2nd day of November 2006.

9

<pre>
/s/Haley Mathews Jonas
John W. Taylor, Bar No. 21378
Haley Mathews Jonas, Bar No. 30631
Attorneys for Plaintiff
Taylor & Associates
13777 Ballantyne Corporate Place, Suite 320
Charlotte, NC  28277
Phone No.:      (704) 540-3622
Facsimile No.:        (704) 540-3623
Email addresses: johntaylor@johntaylorlaw.com
                 haleyjonas@johntaylorlaw.com
</pre>

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that the PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST, SECOND, THIRD AND FIFTH CAUSES OF ACTION AND PLAINTIFF'S FOURTH CAUSE OF ACTION IN PART was filed electronically on the 2nd day of November, 2006 with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following: T. Thomas Cottingham, III at "tcottingham@hunton.com", and K. Stacie Corbett at "scorbett@hunton.com". The parties were also served with a copy of the above document by mailing a copy thereof to each of said parties in an envelope addressed to him at the address indicated below with proper postage attached and deposited in an official depository under the exclusive care and custody of the United States Post Office Department on the 2nd day of November, 2006.

T. Thomas Cottingham, III  
K. Stacie Corbett  
Hunton & Williams, LLP  
Bank of America Plaza  
101 South Tryon Street, Suite 3500  
Charlotte, NC 28280

                                          /s/Haley Mathews Jonas  
                                          Haley Mathews Jonas, Bar No. 30631  
                                          Attorney for Plaintiff  
                                          Taylor & Associates  
                                          13777 Ballantyne Corporate Place, Suite 320  
                                          Charlotte, NC 28277  
                                          Phone No.:    (704) 540-3622  
                                          Fax No.:      (704) 540-3623  
                                          Email address:      haleyjonas@johntaylorlaw.com